UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 07-CV-245 (JFB) (AKT)

ERWIN JACKSON,

Plaintiff,

VERSUS

COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, AND OFFICE OF THE NASSAU COUNTY DISTRICT ATTORNEY,

Defendants.

**MEMORANDUM AND ORDER**
May 6, 2010

JOSEPH F. BIANCO, District Judge:

By Memorandum and Order dated January 22, 2010 (hereinafter the "January 22, 2010 Opinion"), this Court granted defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

By motion dated February 11, 2010, *pro se* plaintiff Erwin Jackson (hereinafter "Jackson" or "plaintiff") requests that the Court re-consider the January 22, 2010 Opinion. Specifically, plaintiff contends that (1) his claims are not barred by his state court conviction under *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) the Court improperly relied on defendants' evidentiary submissions, whereas plaintiff was never informed of his obligations in opposing a motion for summary judgment; (3) plaintiff was in possession of additional facts and evidence that bolstered his case against defendants; and (4) the Court incorrectly determined that there were no unconstitutional policies or practices by the County of Nassau (hereinafter the "County").

For the reasons set forth below, the Court denies plaintiff's motion for reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), and Local Civil Rule 6.3. In particular, the Court concludes that (1) *Heck v. Humphrey* bars most, if not all, of plaintiff's claims; (2) the Court properly relied on the affidavits submitted by defendants in support of their motion for summary judgment, and plaintiff was properly provided the Notice to

*Pro Se* Litigant Opposing Motion for Summary Judgment pursuant to Local Rule 56.2; and (3) the supplemental evidence submitted by plaintiff does not warrant reconsideration of the Court's summary judgment decision because plaintiff has not submitted any evidence demonstrating that there was a failure to investigate his complaints, or that there was any other constitutional violation regarding his case, nor has he submitted evidence of any unconstitutional policy or practice that would warrant imposing liability on the County.

I. LEGAL STANDARD

Motions for reconsideration may be filed pursuant to Federal Rules of Civil Procedure 59(e) or 60(b). The standard for granting a motion for reconsideration pursuant to Rule 59(e) is "strict, and reconsideration will generally be denied." *Herschaft v. N.Y. City Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 283 (E.D.N.Y. 2001) (citation omitted). A motion for reconsideration is appropriate when the moving party can demonstrate that the Court overlooked "controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Id.* at 283 (quotation omitted). Alternatively, the movant must demonstrate "the need to correct a clear error or prevent manifest injustice." *Id.* at 284.

Rule 60(b) of the Federal Rules of Civil Procedure also permits the Court to relieve a party from an order in the event of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or in exceptional or extraordinary circumstances. Fed. R. Civ. P. 60(b); *House v. Sec'y of Health & Human Servs.*, 688 F.2d 7, 9 (2d Cir. 1982). The Second Circuit has instructed that Rule 60(b) is "extraordinary judicial relief" and can be granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (citations omitted); *accord United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994).[1]

Local Civil Rule 6.3 provides that a party moving for reconsideration must "set[] forth concisely the matters or controlling decisions which [the party] believes the court has overlooked." *Id.* "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably

---

[1] Although the docket sheet reflects that plaintiff has also filed an appeal to the Second Circuit from this Court's grant of summary judgment to defendants, the Court notes that:

> the district court may grant a rule 60(b) motion after an appeal is taken only if the moving party obtains permission from the circuit court. In *Ryan* [*v. United States Line Co.*, 303 F.2d 430, 434 (2d Cir. 1962), however, the Second Circuit] noted that [a] district court can entertain and deny the rule 60(b) motion; however, if [the district court] decides in favor of it, then and only then is the necessary remand by the court of appeals to be sought. In other words, before the district court may grant a rule 60(b) motion, [the Second Circuit] must first give its consent so it can remand the case, thereby returning jurisdiction over the case to the district court.

*Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992) (internal citations omitted). Because this Court denies plaintiff's motion for reconsideration, permission from the Second Circuit is not a necessary prerequisite to this Court's opinion

be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Black v. Diamond*, 163 F. App'x 58, 61 (2d Cir. 2006) ("To merit reconsideration, a movant must point to law or facts overlooked by the court in its initial ruling."); *Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, 97-cv-6612 (SJ), 2006 U.S. Dist. LEXIS 7635, at *4 (E.D.N.Y. Feb. 15, 2006) ("The standard . . . is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court.").

II. APPLICATION

Plaintiff's motion for reconsideration is based on his contentions that (1) his Section 1983 claims against Nassau County are not barred by the Supreme Court decision in *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) the Court improperly relied on defendants' evidentiary submissions while plaintiff himself was uninformed regarding the requisite submissions for opposing a motion for summary judgment; (3) plaintiff was in possession of additional facts and evidence that bolstered his case against defendants that he was unable to submit as part of his opposition; and (4) the Court incorrectly determined that the County is not liable for its actions.[2] The Court addresses each of plaintiff's arguments in turn, and determines that they are without merit.

A. *Heck v. Humphrey*

Plaintiff first argues that *Heck v. Humphrey* is inapplicable to his claims because he was acquitted at trial of at least three charges in the indictment. Plaintiff further argues that the Court should not have *sua sponte* raised *Heck* as a bar to his claims, because *Heck* was not explicitly relied upon in defendants' briefs. As a threshold matter, the Court notes that it was permitted to raise the *Heck* bar because it was an additional ground upon which to grant defendants' motion. *See, e.g., Consac Indus., Inc. v. LDZ Comercio Importacao E Exportacao LTDA*, No. 01CV3857 (ADS)(ETB), 2002 WL 31094855, at *5 (E.D.N.Y. Aug. 29, 2002). As the Court explained in the January 22, 2010 Opinion, the Supreme Court in *Heck* precluded Section 1983 claims related to a conviction that has not been invalidated:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of

---

[2] Plaintiff filed several sets of papers in support of his motion for reconsideration. Plaintiff filed his initial motion on February 11, 2010. (*See* Docket entry [78].) Those papers are referred to as "Pl.'s First Mot." Plaintiff filed an additional brief regarding the failure to notify him of Local Rule 56.1's requirements on February 18, 2010. (*See* Docket entry [79].) This is referred to as "Pl.'s 56.1 Mot." Plaintiff then filed supplemental motion papers on March 9, 2010.

(*See* Docket entry [81].) These papers are referred to as "Pl.'s Second Mot." Plaintiff also submitted a memorandum of law regarding the inapplicability of *Heck v. Humphrey*, which is referred to as "Pl.'s *Heck* Mot." References to "Defs.' Mot." are to defendants' motion for summary judgment, filed with the Court on May 15, 2009.

3

habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck*, 512 U.S. at 486-87 (footnotes omitted). As this Court noted in the January 22, 2010 Opinion:

> Jackson was convicted after a trial in state court of nine counts of Robbery in the First Degree and one count of Conspiracy in the Fourth Degree on July 30, 2008. It is apparent that Jackson is still incarcerated for this conviction and, to date, has been unsuccessful in challenging his conviction or has not even attempted to do so.

*Jackson v. County of Nassau*, No. 07-CV-245 (JFB)(AKT), 2010 WL 335581, at *8 (E.D.N.Y. Jan. 22, 2010). Thus, to recover damages for alleged constitutional violations, Jackson's claims must not implicate the validity of his underlying conviction.

Plaintiff argues in his motion for reconsideration that because he was acquitted of three counts of the indictment, his claims are not barred by *Heck*. (Pl.'s Second Mot. ¶ 13.) Plaintiff also alleges that *Heck* does not control because his sentence was vacated as being illegal by the Appellate Division on September 15, 2009. *See People v. Jackson*, 885 N.Y.S.2d 213 (App. Div. 2009).

The Court first notes that plaintiff's sentence was vacated because plaintiff was illegally sentenced as a first-time felony offender instead of as a persistent violent felony offender. *Id.* at 214. The Appellate Division found that the County Court erred in ruling that the People had not proven Jackson's two predicate violent felony convictions beyond a reasonable doubt. *Id.* Accordingly, Jackson's sentence was vacated only so that he could be resentenced as a persistent violent felony offender. As a result of his appeal, plaintiff's original sentence of a minimum aggregate of just over twenty-five years was vacated upon a motion of the District Attorney and on October 27, 2009, plaintiff was resentenced to an aggregate indeterminate sentence of forty-four years to life imprisonment. (*See* Defs.' Opp., Ex. A. Decl. of Ralph J. Reissman.) Thus, the fact that plaintiff's sentence was vacated is irrelevant to the instant inquiry, because it did not involve any finding that plaintiff's convictions were invalid.

Here, Jackson was charged with twelve counts of robbery in the first degree, one count of conspiracy in the first degree, one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree. (*See* Pl.'s Second Mot. Ex. 16.) According to plaintiff, he was acquitted of counts one and two of the

4

indictment, which charged Jackson with the July 23, 2005 robbery of the Bethpage Federal Credit Union, and count eight of the indictment, which charged him with the robbery of the Majesty Cruise Ship on October 1, 2005. (Pl.'s Second Mot. ¶ 11.) Plaintiff also alleges that "the alleged attempted robbery offense was dismissed by the grand jury on or about December 19, 2005." (*Id.* ¶ 13.)

Despite plaintiff's acquittal on several counts, *Heck v. Humphrey* applies to plaintiff's lawsuit because plaintiff's claims and arguments are not focused around particular charges or counts of which he was acquitted; rather, his claims against the County are based upon alleged violations by Officer Hughes and Detective Comiskey that affected his trial in general. The Court notes that there are no claims against individual defendants for false arrest or malicious prosecution or any other alleged constitutional violations. In fact, as noted in the January 22, 2010 Opinion, plaintiff connects these violations directly to his ultimate conviction: "Plaintiff's complaint claims that he was 'subsequently indicted based upon officer Hughes['s] 'inaccurate' testimony.' Plaintiff also contends that during his pretrial hearings there was extensive 'late disclosure of [exculpatory] material.'" *Jackson*, 2010 WL 335581, at *8 (citing Compl. ¶¶ 9, 11)). Thus, plaintiff's lawsuit challenges not only the acquitted counts, but the convicted counts as well. Plaintiff's allegations attempt to undermine the legality of his entire prosecution. Such claims are barred by *Heck* when plaintiff was convicted on at least some of the counts with which he was charged; the Second Circuit noted this in *Zarro v. Spitzer*:

Counts 1 and 12 both rest on the alleged illegality of the entire investigation and prosecution of this case. Granting relief on either count would require finding that the prosecutor acted without legal authority, without probable cause, or in violation of Plaintiff's constitutional rights. Such a finding would necessarily impugn the validity of Plaintiff's conviction. Similarly, a ruling in Plaintiff's favor as to Counts 2 and 7, which raise questions about Plaintiff's Sixth Amendment right to counsel, and Counts 4 and 8, which accuse the defendants of tampering with evidence and intimidating a witness, would also implicate the validity of his conviction. Finally, Count 6, which alleges that the defendants impermissibly maligned Plaintiff's religious practices during the trial, is barred for the same reason. We therefore affirm the district court's dismissal of these counts of Plaintiff's Complaint.

274 F. App'x 31, 34-35 (2d Cir. 2008); *see Garber v. Barragan*, No. CV 07-7254 (DDP)(RNB), 2009 WL 1649071, at *6 (C.D. Cal. June 9, 2009) ("However, the fact that plaintiff may have been acquitted of the offense for which he initially was arrested (i.e., brandishing a weapon) is irrelevant since plaintiff was convicted of two other offenses arising out of the same incident." (collecting cases)); *see also Covington v. City of N.Y.*, 171 F.3d 117, 123 (2d Cir. 1999); *Sealey v. Fishkin*, No. 96 CV 6303(RR), 1998 WL 1021470, at *4 (E.D.N.Y. Dec. 2, 1998). Plaintiff makes no attempt to tailor his allegations to the charges of which he was acquitted. Plaintiff does not connect any of his alleged constitutional violations to specific charges. Accordingly, because plaintiff's claims allege constitutional violations that, if defendants were found liable,

5

would necessarily impugn the validity of plaintiff's conviction, plaintiff's claims are barred by *Heck*.

Even assuming that *Heck* did not apply to the instant lawsuit, the January 22, 2010 Opinion addressed the merits of plaintiff's claims and found his allegations to be lacking any evidence that could survive summary judgment. Accordingly, the Court denies plaintiff's motion to reconsider the Court's January 22, 2010 Opinion based upon the alleged inapplicability of *Heck v. Humphrey*. As discussed below, even taking into consideration plaintiff's supplemental evidentiary and written submissions, the Court concludes that plaintiff's allegations—that the County of Nassau has a policy of allowing its police officers to withhold exculpatory evidence, to make perjurious statements, and to falsely verify felony complaints against plaintiff when they had no personal knowledge of the underlying facts, and that the County has a policy of failing to investigate criminal complaints regarding these types of violations if they are filed by pretrial detainees or criminal defendants—are not supported by any evidence that raises a genuine issue of fact that survives summary judgment.

B. Defendants' and Plaintiff's Evidentiary Submissions on the Original Motion for Summary Judgment

Plaintiff next argues that the Court improperly relied on affidavits submitted by defendants. Plaintiff contends that these affidavits were false and self-serving and, therefore, should have been disregarded by the Court. Plaintiff further argues that the defendants never served or gave notice to him "that he would be required to respond to the defendants' Local Rule 56.1." (Pl.'s 56.1 Mot. at 1.)

First, plaintiff argues that the Court erroneously relied on the affidavits submitted by Assistant District Attorney ("ADA") Barbara Kornblau, ADA Steven Schwartz, and ADA Warren Thurer. Specifically, plaintiff argues that the affidavits of those ADAs are not based upon personal knowledge and are inadmissible. (Pl.'s Second Mot. ¶¶ 43-44.) The Court properly relied on defendants' affidavits in granting summary judgment. Defendants offered several affidavits in support of their motion for summary judgment. Federal Rule of Civil Procedure 56(e)(1) provides that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). The affidavits submitted by ADAs Kornblau, Thurer, and Schwartz were all based on those individuals' personal knowledge and set out facts that would be admissible in evidence. ADA Kornblau's affidavit states that she "personally reviewed a complaint made by Erwin Jackson against Nassau County Police Detective John Comiskey." (Defs.' Mot. Ex. K ¶ 4.) ADA Kornblau also alleges that "in [her] capacity as Bureau Chief of the Public Corruption Bureau, [she] also personally reviewed a complaint made by Erwin Jackson against Nassau County Police Officer Joseph Hughes." (*Id.* ¶ 5.) The facts proffered in her affidavit are based on her personal knowledge from reviewing and investigating those complaints. (*See id.*) ADA Schwartz's affidavit recites his responsibilities as Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office, and states that he personally "investigated the proposed accusatory instruments dated November 21, 2006 lodged by Erwin Jackson against Nassau County Police Detective John Comiskey." (Defs.' Mot. Ex. Q

¶ 9.) Finally, the affidavit submitted by ADA Thurer is also based on his personal knowledge as the Bureau Chief of the Nassau County Criminal Complaint Unit. ADA Thurer's affidavit describes the operations of that unit based on his personal work and supervision of the unit. (Defs.' Mot. Ex. W.)

Defendants submitted multiple affidavits and other evidentiary exhibits in support of their motion for summary judgment. As articulated in the January 22, 2010 Opinion, once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33). However, plaintiff's opposition papers (and his motion for reconsideration) are rife with conclusions and allegations that lack evidentiary support. The Court properly relied upon the affidavits and other evidentiary exhibits submitted by defendants in support of their motion for summary judgment, and plaintiff's motion for reconsideration on this ground is denied.

Plaintiff further argues that he was not aware of the requirements of Local Rule 56.1, whereby he was required to submit a statement of material facts along with his opposition papers. (*See* Pl.'s 56.1 Mot. at 1-3.) However, plaintiff's claim is belied by the proof of service attached to defendants' opposition papers, which states that on May 15, 2009, plaintiff was served with the "[n]otice to pro se litigant opposing motion for summary judgment pursuant to Local Rule 56.2." (Defs.' Opp. Ex. B.) In fact, a copy of the letter served on plaintiff on May 15, 2009, and a copy of Local Rule 56.2 and Federal Rule of Civil Procedure 56, which accompanied that letter, were submitted by plaintiff along with his motion for reconsideration. (*See* Pl.'s 56.1 Mot. Ex. A.) Nonetheless, assuming that plaintiff was not apprised of the requirements of Local Rule 56.1, plaintiff was not prejudiced by his failure to submit a statement of material facts. As this Court noted in the January 22, 2010 opinion:

> Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply

with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935(ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). In plaintiff's opposition papers, he specifically identified those paragraphs of defendants' Rule 56.1 statement with which he agreed that there were no material disputed issues of fact. The Court, in its discretion, thus relies on those paragraphs as equivalent to plaintiff's Rule 56.1 statement of facts for the purposes of this opinion. In the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will also only deem admitted those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504-05.

2010 WL 335581, at *1 n.1. Plaintiff's opposition papers specifically identified those paragraphs of defendants' 56.1 statement with which plaintiff agreed there were no material disputed issues of fact. Furthermore, this Court searched the record to determine which statements in defendants' 56.1 statement were unrefuted based on all the evidence before the Court at that time. This included a thorough examination of plaintiff's deposition. Even in cases in which the opposing party fails to file a response under Rule 56.1, "a district court may conduct a review of the record to determine if summary judgment is appropriate." *Every v. Makita U.S.A., Inc.*, No. 02-CV-8545, 2005 WL 2757952, at *7 (S.D.N.Y. Oct. 24, 2005); *see also Fleary v. State of N.Y. Mortgage Agency*, No. CV-04-1557 (CPS), 2006 WL 335701, at *6 (E.D.N.Y. Feb. 13, 2006). To be sure, even "where a party against whom summary judgment is sought *fails entirely to respond to the motion*, the court need ensure only that the averments in the movant's Rule 56.1 statement are supported by evidence and show an absence of a genuine issue for trial." *Morisseau v. DLA Piper*, 532 F. Supp. 2d. 595, 618 (S.D.N.Y. 2008) (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) and *Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)) (emphasis added). Furthermore, this Court has permitted plaintiff to submit several sets of supplemental papers in support of his motion for reconsideration. The Court has examined plaintiff's supplemental submissions, in addition to his prior submissions. Thus, plaintiff has suffered no prejudice, even assuming that he was unaware of the requirement that he submit a statement of material undisputed facts along with his papers opposing the original motion. Accordingly, the Court denies plaintiff's motion for reconsideration on this ground.

C. Plaintiff's Supplemental Facts in Support of His Motion for Reconsideration

As a threshold matter, this Court notes that plaintiff has not submitted any evidence or controlling law that demonstrate "exceptional circumstances" justifying the "extraordinary judicial relief" of granting a motion for reconsideration. *See Nemaizer*, 793 F.2d at 61. The Court concludes that plaintiff's claims are without merit, and the "supplemental facts" he has submitted do not warrant reconsideration of the Court's grant of summary judgment to defendants.

8

Plaintiff's motion for reconsideration and supplemental facts contend that "no District Attorney is going to conduct any 'meaningful investigation' on behalf of complaints filed by an alleged 'criminal bank robber' against the prosecutors, chief witnesses, even if the complaints are meritorious and supported (as with plaintiff's complaints) by overwhelming evidence." (Pl.'s Second Mot. ¶ 17.) Plaintiff alleges that defendants could not have conducted any investigation against the officers while plaintiff's criminal proceedings were still pending (Pl.'s Second Mot. ¶ 18), and that defendants only alleged that they "reviewed" plaintiff's complaints against the officers—they did not "investigate" the complaints. (Pl.'s Second Mot. ¶ 20.) However, plaintiff's conclusory claims are belied by the evidence. In addition to the affidavits submitted by those ADAs who were personally involved in the investigation of plaintiff's complaints against individuals involved in his prosecution, defendants also submitted the affidavit of a former Nassau County ADA, who investigated and prosecuted a complaint against a Nassau County Police Officer in an unrelated matter that alleged that the officer had committed perjury by falsely testifying before the grand jury. (Defs.' Mot. Ex. Y ¶¶ 2-5.) That police officer was prosecuted and convicted of perjury in the third degree. (*Id.* ¶ 8.)

Plaintiff also argues that Officer Joseph Hughes committed perjury before the grand jury. Specifically, plaintiff argues that Officer Hughes admitted at the July 2006 pre-trial hearing that his grand jury testimony regarding when the vehicle containing the attempted bank robbery suspects fled was "a little inaccurate." (Pl.'s Second Mot. Ex. 3.) Plaintiff also asserts that Officer Hughes testified in front of the grand jury that he observed four doors on the alleged vehicle that the suspects were driving, whereas Officer Hughes admitted at the July 10, 2006 pre-trial hearing that such testimony was "incorrect." (Pl.'s Second Mot. ¶ 24.) In fact, Officer Hughes corrected himself, and noted that there were three doors on the vehicle. (Pl.'s Second Mot. Ex. 5.) The Court first notes that inconsistencies in Officer Hughes's testimony do not warrant a conclusion that perjury was committed. Indeed, "[t]he fact of an inconsistency [in testimony] alone does not warrant such a conclusion [that perjury was committed], especially when the inconsistency is brought to the attention of the trier of the facts." *People v. Kitchen*, 556 N.Y.S.2d 311, 312 (App. Div. 1990); *see also People v. Fisher*, 664 N.Y.S.2d 277, 277 (App. Div. 1997).

Plaintiff contends that there remain disputed issues of fact regarding whether defendants investigated plaintiff's claims against Officer Hughes. (Pl.'s Second Mot. ¶ 27.) According to plaintiff, Officer Hughes subscribed and swore to the five criminal felony complaints against plaintiff, without any personal knowledge of the facts alleged in those complaints. (Pl.'s Second Mot. ¶¶ 29-30.) However, as discussed in the January 22, 2010 Opinion, Officer Hughes was entitled to rely upon the knowledge of fellow police officers in preparing and verifying the criminal complaints against plaintiff, based on the "collective knowledge doctrine" or "fellow officer rule." *See Savino v. City of N.Y.*, 331 F.3d 63, 74 (2d Cir. 2003); *Stokes v. City of N.Y.*, No 05-CV-0007 (JFB) (MDG), 2007 U.S. Dist. LEXIS 32787, at *17 (E.D.N.Y. May 3, 2007); *Phelps v. City of N.Y.*, No. 04 CIV. 8570 (DLC), 2006 U.S. Dist. LEXIS 42926, at *9-10 (S.D.N.Y. June 29, 2006). Also notable is that for each of the felony complaints that Officer Hughes verified that were not based on his own observations (*see* Pl.'s Second Mot. Ex. 1, at 1),

he explicitly stated that the information to which he was swearing was based upon "information and belief" and identified the sources of such information. (*See id.* at 2-5.) New York Criminal Procedure Law § 100.15(3) permits "[t]he factual allegations [in a criminal complaint or information to] be based either upon personal knowledge of the complainant or upon information and belief." For example, on the felony complaint filed regarding the July 23, 2005 robbery, Officer Hughes verified that "[t]he above is based on information and belief the source of said information and the basis of said belief being the written statements of the witnesses and victim and the oral admission of the defendant." (*Id.* at 2.) The felony complaint for the September 2, 2005 robbery was "based on information and belief the source of said information and the basis of said belief being the written statements of the witnesses and the oral admissions of the defendant." (*Id.* at 3.) The October 1, 2005 felony complaint attributed the information therein to "information and belief the source of said information and belief being the interview and statements of witnesses, evidence secured as well as the interview and statements made by the defendant where he admitted his involvement in this robbery." (*Id.* at 4.) Lastly, the November 13, 2005 robbery felony complaint was also based on Officer Hughes' information and belief, "the source of said information and belief being the statements of witnesses, evidence secured, as well as the interview and statements of the defendant." (*Id.* at 5.) The crime reports associated with each of these robberies also indicate the sources of such information. (*See* Defs.' Mot. Ex. AA.)

Moreover, although plaintiff appears to argue that the arresting officer should prepare the information or criminal complaint (*see* Pl.'s Second Mot. ¶ 38), this is contrary to the Nassau County Police Department arrest procedure. According to Nassau County policy, "[t]he arresting officer will prepare a Crime Report and supply the Desk Officer with sufficient information to prepare the District Court Information." (Defs.' Mot. Ex. Z, Art. 17, rev. 1, Rule 13(1).)

Plaintiff thereafter filed a criminal complaint against Officer Hughes, which he contends was not investigated by defendants. In the alternative, plaintiff argues that any investigation conducted by defendants was not "meaningful." (Pl.'s Second Mot. ¶ 32.) Plaintiff has presented no evidence other than his bald assertions to support his claims that his complaint against Officer Hughes was not meaningfully investigated. Defendants submitted affidavits by individuals at the Nassau County District Attorney's Office who investigated Jackson's claims. ADA Kornblau, former Bureau Chief of the District Attorney's Public Corruption Bureau, investigated plaintiff's complaints against the officers. (*See* Defs.' Mot. Exs. K, X.) She specifically states that she reviewed Jackson's complaint and notified ADA Looney, who was assigned to Jackson's prosecution, and forwarded the complaint to the Internal Affairs Bureau of the Nassau County Police Department. (Defs.' Mot. Ex. K ¶ 6.)

In further support of their assertion that Jackson's complaint against Officer Hughes was investigated, defendants also submitted the Citizen Complaint Summary associated with Jackson's complaint. (*See* Defs.' Mot. Ex O.) The Citizen Complaint Summary indicates that Jackson's complaint was received, reviewed, and processed. The officer processing Jackson's complaint found that "[a] check of the D.A. system reveal[ed] that that the criminal case against the complainant [was] still active."

10

(*Id.*) Accordingly, as with plaintiff's *Rosario* allegations, the appropriate venue for any alleged violation to be addressed was at plaintiff's trial, because it was still pending. The trial judge did address these violations. (*See, e.g.*, Pl.'s Second Mot. Ex. 15.)

Plaintiff also argues that his claims against Detective Comiskey were not properly investigated. However, ADA Kornblau submitted an affidavit stating that she received and reviewed Jackson's complaint against Detective Comiskey. (Defs.' Mot. Ex. K ¶ 4.) ADA Kornblau reviewed the transcript of the testimony referred to in Jackson's complaint and noted that the issue of the failure to turn over *Rosario* material had been raised by Jackson's criminal attorney to the trial court—which is the proper venue to allege and receive remedial relief for such a violation. *See, e.g., People v. Rivera*, 577 N.E.2d 1045, 1046 (N.Y. 1991) ("Inasmuch as defense counsel failed to request specific relief during the *Wade-Mapp* hearing, when the court had an opportunity to prevent the harm of which defendant now complains, defendant is now foreclosed from arguing in this Court that his *Rosario* rights were violated by the prosecutor's failure to turn over the note before the close of the hearing"); *People v. Jackson*, 577 N.E.2d 1044, 1045 (N.Y. 1991) ("Defendant's failure to object at a time when any *Rosario* violation could have been redressed . . . constituted a failure to preserve the issue for appellate review."); *see also Ranta v. Bennett*, No. 97CIV.2169 (ERK)(JMA), 2000 WL 1100082, at *35 (E.D.N.Y. May 23, 2000) (collecting cases). It is within the trial court's discretion to determine the appropriate sanctions for such a violation. *See, e.g., People v. Andino*, 664 N.Y.S.2d 14, 15 (App. Div. 1997).

Plaintiff further claims that the Court cannot rely upon the affirmation submitted by ADA Schwartz; however, plaintiff only offers unsupported allegations in opposition to Schwartz's affirmation. (*See* Pl.'s Second Mot. ¶¶ 43-48.) According to the affidavit of ADA Schwartz, he "investigated the proposed accusatory instruments dated November 21, 2006 lodged by Erwin Jackson against Nassau County Police Detective John Comiskey." (Defs.' Mot. Ex. Q ¶ 9.) Upon investigation, ADA Schwartz found Jackson's allegations "to be unfounded and therefore informed the Associate Court Clerk that the Nassau County District Attorney's Office has declined to prosecute the proposed accusatory instruments . . . ." (*Id.*) ADA Schwartz further affirmed that "[a]ll proposed accusatory instruments are given individual attention and investigation. There is no distinction made for the status of the complainant and pretrial detainees are not treated any differently than other individuals proposing accusatory instruments to be filed." (*Id.* ¶ 7.) The affidavit continues: "Specifically, with respect to allegations of an assistant district attorney's or police officer's criminal conduct, such allegations are individually investigated and if appropriate, are forwarded to the Nassau County District Attorney's Office Public Corruption Bureau." (*Id.* ¶ 8.) Jackson offers no evidence in support of his conclusory assertions that ADA Schwartz lacked authority to investigate his criminal complaint and that ADA Schwartz therefore did not do so.[3]

---

[3] To the extent that Jackson claims that ADA Schwartz lacked authority to investigate his complaint because ADA Schwartz's "Bureau is responsible for prosecuting misdemeanors in the District Court" (Pl.'s Second Mot. ¶ 47), the Court notes that the affidavit submitted by ADA Schwartz states that he is the "Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office [and the] District Court Trial

Jackson also claims that a letter he received from Gregory Hecht, the associate clerk of the Nassau County District Court, "totally contradicts ADA Schwartz's affidavit, and said letter tends to support plaintiff's" claim that the District Attorney has a policy of directing the clerk of the court to not accept complaints filed by criminal defendants and prisoners. (*See* Pl.'s Second Mot. ¶¶ 50-51.) The letter states:

> Please be advised that the misdemeanor complaint filed by you, dated April 6, 2006, has been received and docketed. It appeared on the arraignment calendar, docket 2006na009709, on April 25, 2006. Upon the calling of the case into the record, the People of the State of New York, represented by the Nassau County District Attorney's Office, declined prosecution of the complaint. The complaint was then dismissed by the Hon. Randy Sue Marber.

(Pl.'s Second Mot. Ex. 7.) However, as defendants point out, this letter does not contradict the affidavit of ADA Schwartz, which states:

> When private citizens want to file an accusatory instrument in Nassau County, they either send it to the Nassau County District Attorney's Office directly or they contact the Clerk of the District Court. When private citizens provide the Clerk with an accusatory instrument, the Associate Court Clerk sends me a copy of the proposed accusatory instrument and asks whether the District Attorney's Office intends to pursue prosecution of the matter.

(Defs.' Mot. Ex. Q ¶ 5.)

In sum, the purported evidence submitted by plaintiff is repetitive of the papers he previously submitted and the arguments that he made in his opposition to defendants' motion to dismiss. None of plaintiff's supplemental submissions warrants reconsideration of the Court's January 22, 2010 Opinion. Thus, the Court concludes that plaintiff has presented no supplemental evidence in his motion for reconsideration that would warrant this Court reversing its decision to grant summary judgment in the January 22, 2010 decision.

### D. *Monell* Liability

Finally, plaintiff's claims against defendants also fail because, even if there was evidence of a failure to investigate his complaints or some other constitutional violation by an individual officer, he has not provided any evidence of a policy or procedure of constitutional violations by the County that would be sufficient to impose liability under *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). "In order to prevail on a claim against a municipality under *Monell*, a plaintiff must allege, among other things, that a 'municipal policy of some nature caused a constitutional tort.'" *Lynch v. Suffolk County Police Dep't*, 348 F. App'x 672, 675 (2d Cir. 2009) (citations omitted).

As this Court noted in the January 22, 2010 Opinion, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C.*

---

Bureau's *principle* [sic] *responsibility* is to prosecute misdemeanor crimes and violations . . . ." (Defs.' Mot. Ex. Q ¶¶ 2-3.)

*Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Here, plaintiff has not submitted evidence regarding any other instances of perjury, withheld exculpatory material, or falsely verified complaints by the County in instances other than those alleged that pertain to plaintiff's trial. Even assuming that such constitutional violations did occur at plaintiff's own trial, and plaintiff could obtain relief for those violations (which he cannot, as discussed *supra*), such violations were due to "improper conduct" by particular individuals, rather than those individuals "properly executing [their] duties under the policy." *Porter v. Lowndes County, Miss.*, 406 F. Supp. 2d 708, 712-13 (N.D. Miss. 2005). There is no evidence of a policy or procedure by which Nassau County encourages its officers to testify falsely, falsely swear to complaints, or withhold exculpatory evidence. Attributing the individual officers' alleged misbehavior to the County would "require the Court to hold the municipal defendants liable under a *respondeat superior* theory, which has been unambiguously rejected by the courts." *Id.* at 713 (citing *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001)); *see also Ricciuti*, 941 F.2d at 123. Indeed, in another case in this Circuit, where a plaintiff made similar allegations against the City of New York, the court noted that:

> the "mere assertion that a municipality has such a policy is insufficient to establish *Monell* liability," *Perez v. City of New York*, 97 Civ. 2915, 2002 U.S. Dist. LEXIS 4297, *4 (E.D.N.Y. Mar. 14, 2002), and in any case Plaintiff may not overcome summary judgment by relying "merely on allegations or denials in its own pleading," Fed. R. Civ. P. 56(e). Here, Plaintiff has not shown a set of facts, by affidavit, deposition or otherwise, that could lead a reasonable juror to conclude that *Monell* liability is appropriate for the City of New York. The standard for liability based on a claim of failure to train is a high hurdle to overcome. A plaintiff must establish through admissible evidence that "the failure to train amounts to deliberate indifference to the rights of those whom municipal employees will come into contact," and "only where a failure . . . reflects a deliberate or conscious choice by a municipality . . . can a city be liable for such failure under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S. Ct. 1197, 103 L. Ed.2d 412 (1989).

*Manganiello v. City of N.Y.*, No. 07 Civ. 3644 (HB), 2008 WL 2358922, at *10 (S.D.N.Y. June 10, 2008). The Court agrees with this analysis, and concludes that plaintiff has failed to provide evidence of any policy or procedure whereby defendants permitted, encouraged, or trained their employees to engage in constitutional violations.

Plaintiff also failed to submit supplemental evidence that demonstrates that the County has a policy or practice of failing to investigate criminal complaints filed by prisoners, criminal defendants, or other pretrial detainees. Although in his supplemental submission, plaintiff offers five letters received by pre-trial criminal defendants from the District Attorney's Office, in which the District Attorney's Office declined to prosecute their criminal complaints, these letters do not demonstrate that the District Attorney's Office failed to investigate and address each individual complaint before deciding it was without merit. As this Court explained extensively in its January 22, 2010

Opinion, defendants have put forward significant evidence regarding the processes by which criminal complaints are received and investigated:

> ADA Kornblau affirms that the County does investigate criminal complaints against police officers and ADAs—including those made by pretrial and criminal defendants: "[M]any of the [District Attorney's Public Corruptions Bureau's] cases are referred from members of the public, including direct complaints of police misconduct that the Bureau receives from defendants and/or their attorneys." (Defs.' Ex. X. ¶ 5.) Similarly, "[t]o facilitate the investigation into complaints by incarcerated individuals including pretrial detainees, the Public Corruption Bureau maintains a hotline in the Nassau County Correctional Center for the purpose of allowing inmates to file complaints directly with the Public Corruption Bureau, without having to have their complaints reviewed first by any other entity, agency, or person." (*Id.*) Moreover, ADA Kornblau's affidavit states that "[e]ach criminal complaint is afforded individual attention and investigation . . . [and if] after investigation, it is determined that a complaint is supported by credible evidence, the Nassau County District Attorney's Public Corruption Bureau will recommend prosecution, after which those cases will be prosecuted in criminal court." (*Id.* ¶¶ 6-7.)

\* \* \*

The County of Nassau also submitted an affidavit from ADA Warren Thurer, the Bureau Chief of the Nassau County Criminal Complaint Unit. According to ADA Thurer, "[s]pecifically with respect to allegations of an assistant district attorney's or police officer's criminal conduct, such allegations will be individually investigated and if appropriate, will be forwarded to the Public Corruption Bureau of the Nassau County District Attorney's Office." (Defs.' Ex. W ¶ 10; *see also* Defs' Ex. Q ¶ 10 ("There is no policy, practice, or custom within the Nassau County District Attorney's Office that precludes the consideration, investigation, and/or acceptance of criminal cross-complaints brought by an accused against police officers and/or assistant district attorneys based upon the status of the complainant as a pretrial detainee").)

*Jackson*, 2010 WL 335581, at \*12-13.

Defendants have also put forward evidence that supports their assertion that criminal complaints are not treated differently based upon the identity or status of the filer of the complaint. As noted in the January 22, 2010 Opinion:

> An affidavit provided by ADA Steven L. Schwartz, Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office, states that:
>
>> All proposed accusatory instruments are given individual attention and investigation. There is no distinction made for the status of the complainant and pretrial detainees are not treated

any differently than other individuals proposing accusatory instruments to be filed. Each proposed accusatory instrument is investigated for possible criminality and, if appropriate, any case may be forwarded and assigned to one of the investigative bureaus within the District Attorney's Office, or prosecuted within the District Attorney's District Court Bureau.

\* \* \*

(Defs.' Ex. Q ¶¶ 7-8.) Plaintiff has presented no evidence to contradict the information contained in these affidavits or to suggest otherwise.

*Jackson*, 2010 WL 335581, at \*13-14. Moreover, the affidavit submitted by ADA Kornblau states:

> Complaints are retrieved from within the computerized complaint system in one of three ways: (1) a complainant's name; (2) a defendant's name; or, (3) a complaint number. Therefore, there is no way to retrieve criminal complaints made specifically by pretrial detainees from within the computer complaint system since complaints are placed into the system without complainant classification (e.g., civilian, pretrial detainee, police officer, etc.).

(*Id.* ¶ 8; *see also* Defs.' 56.1 ¶ 47; Defs.' Ex. W ¶ 11.) In plaintiff's opposition papers, he stated that he did not dispute these facts. (Opp. at 12.)

*Jackson*, 2010 WL 335581, at \*13. Thus, the Court concludes that, in the face of extensive evidentiary submissions by defendants, plaintiff failed to provide any evidence to create a triable issue of material fact regarding whether the County had a policy or practice of permitting, encouraging, or training officers to commit constitutional violations. Nor has plaintiff provided evidence in support of his assertions that the County had a policy of declining to investigate criminal complaints filed by criminal defendants, prisoner, and other pretrial detainees. Accordingly, the Court determines that plaintiff has not presented new evidence or case law that warrants this Court reconsidering the January 22, 2010 Opinion.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration is denied. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: May 6, 2010
Central Islip, New York

15

* * *

Plaintiff is representing himself *pro se*. Defendants are represented by Ralph J. Reissman and John Ciampoli of the Nassau County Attorney's Office, One West Street, Mineola, NY 11501.